UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

IN RE:                                              Case No. 14-29129-RAM

CHRISTIAN FAMILY WORSHIP CENTER              Chapter 11
OF SOUTH FLORIDA, INC.
d/b/a THE OASIS MIAMI,

        Debtor.
_____/

## SECURED CREDITOR, MULTIBANK 2009-1 CRE VENTURE, LLC'S OBJECTIONS TO DEBTOR'S DISCLOSURE STATEMENT AND REQUEST FOR DISMISSAL [ECF. NO. 38]

Secured Creditor, Multibank 2009-1 CRE Venture, LLC (the "Multibank"), as the successor in interest to 1st Centennial Bank[1], by and through its undersigned counsel and pursuant to Section 1125(a) of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* ("Code"), Federal Rule of Bankruptcy Procedure 3017(a), and *Order (I) Setting to Consider Approval of Disclosure Statement; (II) Setting Deadline for Filing Objections to Disclosure Statement; and (III) Directing Plan Proponent to Service Notice* [ECF. No. 39], hereby objects to the adequacy of the information provided by the debtor and debtor in possession, Christian Family Worship Center of South Florida, Inc. (the "**Debtor**"), in its Disclosure Statement for Debtor's Chapter 11 Plan of Reorganization ("**Disclosure Statement**") [ECF. No. 38] and seeks dismissal with prejudice of this Chapter 11 for one year.

### STANDARD FOR ADEQUATE INFORMATION

1. Section 1125(a)(1) of the Code describes, in general terms, the type and quality of the

---

[1] 1st Centennial Bank was placed under receivership with the Federal Deposit Insurance Corporation, and certain of its assets, including the below-discussed Note, Mortgage, and Security Agreement were assigned to Multibank 2009-1 CRE Venture, LLC.

{30021254;1}

information which must be contained in a disclosure statement to satisfy the requirements for solicitation of plan acceptances or rejections. That section defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a) (2010). The point of the disclosure requirement is to "clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

2. An additional requirement imposed by courts before approval of a disclosure statement is a confirmable plan. It is well-settled law that a bankruptcy court should not approve a disclosure statement when it is apparent that the plan accompanying it is not confirmable. *See In re Market Square Inn, Inc.*, 163 B.R. 64, 68 (Bankr. W.D. Pa. 1994) (court refused to approve disclosure statement where plan is not confirmable as a matter of law); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) (disclosure statement approval should not be given if proposed plan does not comply with bankruptcy code); *In re Atlanta West VI*, 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988) (courts "may refuse to approve a disclosure statement when it is apparent that the plan which accompanies the disclosure statement is not confirmable.")

## OBJECTIONS

I.  **THE DISCLOSURE STATEMENT CONTAINS MISLEADING/ INADEQUATE INFORMATION.**

3.  **The Plan Funding**: The Disclosure Statement wrongly informs the creditors and interested parties that the Debtor's proposed Plan of Reorganization [ECF No. 37] ("Plan") will be funded through a Charitable Loan from Life Point Church (the "Plan Funder") in the approximate amount of $958,000 (the "Funding Loan"). The Debtor does not disclose that it currently does not have any binding commitment for the loan. Rather, it possesses a letter dated November 10, 2014 from the Plan Funder stating that the letter " is not a commitment to lend. . . ." The letter is self-described as a "discussion document". *See* Letter dated November 10, 2014 attached hereto as Exhibit A. Moreover, the Disclosure Statement fails to include as a risk of non-confirmation the Debtor's inability to obtain financing. **THE DEBTOR AGREES TO ADDRESS THE FOREGOING ISSUES AND DESCRIBE AND ATTACH THE "COMMITMENT LETTER" TO THE AMENDED DISCLOSURE STATEMENT.**

4.  **The Secured Claims:** The Disclosure Statement misrepresents that the claim of Community Bank is secured by a second mortgage when the Debtor acknowledges it is unsecured. As more fully set forth below, Community Bank is also treated as secured under the Plan and paid in full. The Disclosure Statement does not clearly describe Multbank's secured claim, including the Debtor's acknowledgements concerning the amount and validity of the claim as set forth in the Agreed Interim Cash Collateral Order ([ECF 35] and proposed Final Cash Collateral Order. **THE DEBTOR AGREES TO ADDRESS THE FOREGOING ISSUES IN AN AMENDED DISCLOSURE STATEMENT.**

5.  **Discharge, Release, Exculpation, Injunction:** The entire section concerning discharge, release, exculpation and injunctions set forth in Art. XV at pages 21-22 (collectively

"Releases), appears overbroad, confusing, prejudicial and outside the spirit of the Code and the Local Rules. The Release are not limited to prepetition claims and other claims treated under the Plan. Moreover, the Releases are in favor of third parties and could be interpreted as third party bar orders. For instance, the Disclosure Statement provides that:

> All Persons that have held, currently hold or may hold any liabilities released or exculpated, shall be permanently enjoined from taking any of the following actions against any of the Released Parties *or* their property on account of such released liabilities: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind . . . .

Disc. St. Art. XIV B (pp 21-22). **THE DEBTOR AGREES TO ADDRESS THE FOREGOING ISSUES IN AN AMENDED DISCLOSURE STATEMENT AND INTENDS TO DISCUSS THE RELEASE ISSUES WITH THE ASSISTANT UNITED STATES TRUSTEE IN AN EFFORT TO COMPLY WITH THE RULE AND LAW OF THIS DISTRICT.**

6. **Miscellaneous Items:** Executory contracts and unexpired leases and the proposed treatment of same are not identified in the Disclosure Statement. **THE DEBTOR AGREES TO ADDRESS THE FOREGOING ISSUES IN AN AMENDED DISCLOSURE STATEMENT.**

7. Potential avoidance actions are not valued or described by the Debtor and thus, the Debtor fails to adequately demonstrate its basis for not pursuing avoidance actions. Disc. St. at Art. IV D (p.4) [ECF. No. 38]. **THE DEBTOR AGREES TO ADDRESS THE FOREGOING ISSUES IN AN AMENDED DISCLOSURE STATEMENT.**

8. The Disclosure Statement references Exhibit 3, a liquidation analysis, which is not attached. Nor, is any meaningful liquidation analysis provided. Disc. St. Art. XIV E (p.20). **THE DEBTOR AGREES TO ADDRESS THE FOREGOING ISSUES IN AN AMENDED DISCLOSURE STATEMENT.**

9. The Debtor may possess appraisals of its property and if so, the appraisals should be described. **THE DEBTOR AGREES TO ADDRESS THE FOREGOING ISSUES IN AN AMENDED DISCLOSURE STATEMENT.**

10. The postpetition salaries of the Debtor's employees should be disclosed. **THE DEBTOR AGREES TO ADDRESS THE FOREGOING ISSUES.**

II. **THE DISCLOSURE STATEMENT FAILS TO DISCLOSE THE UNLAWFUL SOLICITATION OF MULTIBANK'S VOTE PRIOR TO APPROVAL OF THE DISCLOSURE STATEMENT AND FAILURE TO TIMELY MAKE ADEQUATE PROTECTION PAYMENTS.**

11. The Debtor should disclose in significant events in the Chapter 11 that the Multibank twice issued Cease and Desist letters to the Debtor contending that the Debtor and the Plan Funder actively violated the anti-solicitation provisions of Section 1125(b) of the Code by encouraging persons to send harassing and threatening letters and make harassing telephone calls to Multibank and its servicer in an effort to pressure the Multibank into voting to accept the Plan.

12. Also, the Debtor should disclose that it failed to timely pay its first three adequate protection payments due to Multibank under the Interim Order for the months of September, October and November 2014, in the monthly amount of $1,200. Disturbingly, at the time of the final cash collateral hearing on November 18, 2014, counsel for the Debtor, seemingly relying on information obtained from the Debtor, incorrectly represented that the September and October payments were made.

III. **THE DEBTOR'S PLAN IS INCAPABLE OF CONFIRMATION.**

13. On its face, the Plan cannot be confirmed without Multibank casting its vote to accept the Plan <u>which is not its intention</u>. Thus, the Plan is destined to fail.

14. Initially, the Plan was not proposed in good faith.[2] The Debtor classifies Community Bank separately as secured although it acknowledges that it is unsecured, seemingly in an effort to obtain a consenting class and favor its hometown bank. Also, the Debtor does not provide for the sale of its vacant parcels of land subject to the lien of Multibank, but instead intends to keep all its real property and pay Multibank the paltry sum of $785,000 on account of its $2.7 million prepetition secured claim. Incredibly, the Debtor intends to pay Community Bank the full amount of its claim notwithstanding that is it is wholly unsecured. The other general unsecured creditors may receive a small distribution depending upon the amount of the funding and the administrative expenses.

15. The Debtor did not comply with Section 1125 of the Code when it permitted the unlawful solicitation of Multibank's vote. 11 U.S.C. § 1129(a)(2).

16. The Plan does not comply with Section 1122 of the Code because it classifies Community Bank separately as a secured creditor even though it should be classified together with the other general unsecured creditors. 11 U.S.C. § 1129(a)(1). *Id.*

17. The Plan is incapable of being confirmed through cramdown on Multibank because the Plan does not provide for Multibank to retain its liens and receive the requisite deferred cash payments or indubitable equivalent of its claim. 11 U.S.C. § 1129(b)(2)(A), (B). Also, the Plan is unfair and discriminatory because Multibank is stripped of its lien and paid less than the full value of its claim and Community Bank is getting favorable treatment. *Id.*

---

[2] A Chapter 11 reorganization plan must be proposed in good faith. 11 U.S.C. § 1129(a)(3). Although the Code does not define "good faith", courts interpret the statute as requiring a reasonable likelihood that the plan "will achieve a result consistent with the objectives and purposes of the Code." *In re McCormick*, 49 F.3d 1524, 1526 (11th Cir. 1995) (citing *In re Block Shim Dev. Co.-Irving*, 939 F.2d 289, 292 (5th Cir. 1991); *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984); *In re Coastal Cable T.V., Inc.*, 709 F.2d 762, 764-65 (1st Cir. 1983) (in corporate reorganization, plan must bear some relation to statutory objective of resuscitating financially troubled company). A plan proposed with the legitimate and honest purpose of reorganizing, that has a reasonable hope of success, meets the good faith requirement. *In re McCormick*, 49 F.3d at 1526, citing *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2nd Cir. 1988); *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985); *In re Mulberry Phosphates, Inc.*, 149 B.R. 702, 707 (Bankr. M.D. Fla. 1993).

## 9073-1 CERTIFICATION

18. Counsel for Multibank conferred with Debtor's counsel concerning the Objections and at the time of filing the parties had agreement concerning amending the Disclosure Statement to address some, but not all, of the Objections as set forth above.

WHEREFORE, Multibank 2009-1 CRE Venture, LLC, respectfully requests entry of an order sustaining its objections and dismissing this action with prejudice for one year and granting Multibank such other relief as may be just and equitable.

Dated: December 9, 2014

                      **AKERMAN LLP**
                      One Southeast Third Avenue
                      25th Floor
                      Miami, Florida, 33131
                      Telephone: 305.374.5600
                      Facsimile: 305.374.5095

                      By: */s/ Joanne Gelfand*
                           Joanne Gelfand
                           Florida Bar No. 515965
                           joanne.gelfand@akerman.com
                           Catherine Douglas
                           Florida Bar No. 085843
                           catherine.douglas@akerman.com

                      *Attorneys for Multibank 2009-1 CRE Venture, LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 9, 2014 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case or as listed on the attached Service List.

By: */s/ Joanne Gelfand*
Joanne Gelfand, Esq.

## SERVICE LIST

**14-29129-RAM Notice will be electronically mailed via CM/ECF to:**

Nicholas B. Bangos, Esq. on behalf of Creditor Community Bank of Florida, Inc.
nbangos@diazreus.com

Catherine E Douglas on behalf of Creditor Multibank 2009-1 CRE Venture, LLC
catherine.douglas@akerman.com, jeanette.martinez@akerman.com

Joanne Gelfand, Esq on behalf of Creditor Multibank 2009-1 CRE Venture, LLC
joanne.gelfand@akerman.com, janet.salinas@akerman.com

Joe M. Grant, Esq. on behalf of Debtor Christian Family Worship Center of South Florida, Inc.
jgrant@msglaw.com, efile@msglaw.com, mg197ecfbox@gmail.com, sleary@msglaw.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

# EXHIBIT A



CONFIDENTIAL DOCUMENT

November 10, 2014

Mr. Travis Spaulding
Christian Family Worship Center of South Florida, Inc.
27500 Old Dixie Highway
Homestead, FL 33032

Dear Mr. Spaulding:

Life Pointe Church ("LPC") is pleased to provide this discussion document outlining the basic terms and conditions for the proposed loan being contemplated to the below noted Borrower. This is not a commitment to lend, but rather an expression of interest in providing financing to the Borrower pursuant to a recent request by the Borrower. The terms and conditions expressed herein, which supersede those defined in the BankUnited proposal dated September 13, 2013, are subject to change in whole or in part, and any formal conveyance of a final approval will be detailed in a formal commitment letter.

| | |
|---|---|
| **Lender:** | Life Point Church (the "Lender" |
| **Borrower:** | Christian Family Worship Center of South Florida, Inc. (the "Borrower") |
| **Amount and Type:** | $958,480.00 Loan |
| **Purpose:** | To provide financing in support of the Borrower specifically to finance the Borrower's Chapter 11 Plan of Reorganization. |
| **Collateral:** | The loan shall be unsecured. |
| **Interest Rate:** | Effective interest rate will be 0.0% per annum.. |
| **Maturity:** | One (1) year from the date of closing. |
| **Pre-Payment Penalty:** | None. |
| **Financial Reporting:** | 1) Borrower to provide annual CPA AUDITED financial statements to Lender or any other relevant party within 120 days of fiscal year end, beginning with the fiscal year ending 12/31/14. |
| | 2) Borrower to provide quarterly management-prepared financial statements to Lender or any other relevant party within 45 days of the end of each quarter. |
| | 3) Borrower to provide its annual operating budget / projections to Lender or any other relevant party by February 15 of each year. |
| | 4) Borrower shall provide the Lender or any other relevant party with copies of all necessary licenses needed to operate in good standing. |

1
16490 SW 304 St   Homestead, FL 33033-3202   305.247.0889



CONFIDENTIAL DOCUMENT

| | | |
|---|---|---|
| **Loan Conditions:** | 1) | Borrower shall maintain appropriate insurance coverage on all buildings, chattels, fixtures, and associated assets of Christian Family Worship Center of South Florida, Inc. at all times throughout the life of the loan. |
| | 2) | Lender will be responsible for all out of pocket costs associated with the closing of this transaction, including but not limited to legal costs, recording costs, and document stamp taxes. Lender has agreed to pay for the costs associated with the first field exam and inventory appraisal. All future field exams and inventory appraisals to be the responsibility of the Borrower as it relates to costs. |
| | 3) | Other mutually agreed-upon conditions may be warranted as part of the closing and documentation process. |
| **Underwriting Conditions:** | 1) | Subject to additional Lender due diligence and formal credit approval. |
| | 2) | Subject to the receipt and satisfactory review of a third party pre-funding field exam and inventory appraisal, the cost of which shall be borne by the Borrower. |

**Acceptance:**

Again, this is a proposal of terms and not a commitment to lend. Further, the terms and conditions contained herein are subject to change. Please note that this outline may not contain all of the terms, conditions, covenants and other provisions involved in this proposed transaction that would be more fully described in the definitive legal document(s). The proposed terms and conditions shall be subject to a due diligence review of the business and financial affairs of the Borrower, the approval of the proposed terms and conditions by Life Pointe's credit authorities and the execution and delivery of documentation satisfactory in form and substance to Life Pointe's legal counsel. This letter should not be relied upon by any third party and Borrower agrees to keep the contents of this letter confidential. No other oral or written communication shall constitute a loan commitment or other binding obligation of Life Pointe.

Please indicate your acceptance of the terms and conditions set forth herein by signing below and returning one executed copy of this agreement to the undersigned. <u>This agreement shall expire and be void unless the acceptance is received by Life Pointe on or before 5:00 p.m. E.D.T. on December 31, 2014.</u>

We look forward to working with you on the above loan request. Should you have any questions or comments, please feel free to contact me at your earliest convenience at the number below.

Very truly yours,

2

16490 SW 304 St    Homestead, FL 33033-3202    305.247.0889



CONFIDENTIAL DOCUMENT

ACCEPTANCE:

The terms and conditions of this term sheet are acknowledged and accepted as of this ___ day of November, 2014. We understand that acceptance of this term sheet does not create a contract by Life Pointe Church to make, extend, or modify the loan as outlined herein.

Christian Family Worship Center of South Florida, Inc.

_____
Printed Name:
Title:

_____
Dan Bard
Elder, Life Pointe Church

_____
Claude Condo
Elder, Life Pointe Church

_____
J. T. Johnson
Elder, Life Pointe Church